WRI/RALEIGH, L.P., Plaintiff v. ISSA F. SHAIKH, Defendant

No. COA06-784

(Filed 15 May 2007)

**1. Appeal and Error— appealability—denial of summary judgment—final judgment on merits rendered**

Although defendant contends the trial court erred in a breach of contract case by denying his motion for summary judgment, this issue cannot be addressed because a final judgment on the merits has been made.

**2. Contracts— breach—impossibility of performance—frustration of purpose**

The trial court did not err in a breach of contract case by denying defendant's motions for a new trial and amendment of judgment based on the jury's calculation of damages, because:

(1) the doctrine of impossibility of performance was inapplicable when the premises at issue still exist and at the time defendant refused to perform were in the same condition as when the contract was signed; (2) although defendant contends he could not have opened a restaurant on the pertinent premises based on the fact that it was impossible to install the proper grease trap, conclusive evidence was presented that the current tenants of the property were in fact running a restaurant and had installed a functioning grease trap; and (3) the doctrine of frustration of purpose cannot be used where the frustrating event was reasonably foreseeable.

### 3. Damages and Remedies— calculation—present value

The trial court did not abuse its discretion in a breach of contract case by denying defendant's motions for a new trial and amendment of judgment based on the jury's alleged failure to follow the court's instructions on calculating damages based on present value, because: (1) the amount of damages was the same amount requested by plaintiffs, and the trial court considered and rejected defendant's argument in post-trial motions that this figure had not been reduced to present value; (2) there is no requirement that a trial court instruct a jury on the concept and calculation of present damages in cases such as this one; (3) it cannot be said with certainty that the jury's calculation of damages made no adjustments for present value; and (4) defendant provided the jury no evidence as to the present value of damages, nor did he request that the court instruct the jury on a formula or even general guidelines for determining present value.

### 4. Costs— attorney fees—breach of lease of real property

The trial court did not err in a breach of lease case by awarding attorney fees to plaintiff under N.C.G.S. § 6-21.2, because: (1) the term "evidence of indebtedness" under the statute has reference to any printed or written instrument, signed or otherwise executed by the obligors, which evidences on its face a legally enforceable obligation to pay money; and (2) the Court of Appeals has previously applied N.C.G.S. § 6-21.2 to disputes regarding the lease of real property.

Appeal by defendant from an order entered 11 July 2005 by Judge Ronald L. Stephens, denial of defendant's motion for summary judgment and directed verdict entered in open court 25-26 July 2005, judgment entered 6 September 2005, and an order entered 6 December

WRI/RALEIGH, L.P. v. SHAIKH

[183 N.C. App. 249 (2007)]

2005 by Judge Donald W. Stephens, respectively, in Wake County Superior Court. Heard in the Court of Appeals 5 February 2007.

*Maupin Taylor, P.A., by John I. Mabe, Jr., Mark Whitson, and Heather E. Bridgers, for plaintiff-appellee.*

*Hatch Little & Bunn, L.L.P., by John E. McKnight and David H. Permar, for defendant-appellant.*

HUNTER, Judge.

Lessee Issa F. Shaikh ("defendant") appeals from the trial court's denial of his summary judgment motion and motions for directed verdict, for a new trial, for judgment notwithstanding the verdict, and for amendment or modification of the judgment, as well as the court's granting of WRI/Raleigh's ("plaintiff") motion for attorneys' fees. After careful review, we affirm the trial court's rulings as to all.

In early 2002, defendant and plaintiff entered into a lease for premises owned by plaintiff in a shopping center located at 3200 Avent Ferry Road in Raleigh. Defendant's intention was to operate an Italian and Mediterranean restaurant on the premises. After signing the lease, he approached public utility department officials about the layout of the restaurant and learned that, due to an ordinance passed by the City of Raleigh in 1999, the restaurant was required to have a 1,000-gallon grease trap. Defendant had operated restaurants before and was aware of the need for a grease trap, but believed the minimum capacity for such a trap was well below the 1,000-gallon mark (closer to 200 or 300 gallons). No grease trap or provisions for installing a grease trap existed on the premises.

When defendant learned of the need for a grease trap of this size, he obtained estimates from plumbing engineers as to the cost of modifying the premises to comply with the ordinance. The engineers provided estimates but noted that, due to the layout of the premises, any system created was likely to lead to repeated clogging of the line. As a result, defendant decided he could not open a restaurant on the premises and so tendered the keys to plaintiff.

Plaintiff thereafter filed suit for breach of contract. A jury found defendant liable in the amount of $158,542.13. Upon motion by plaintiff, the court awarded court costs and attorneys' fees to plaintiff. Defendant appeals.

**[1]** We first note that one of defendant's arguments is not properly before this Court, and thus will not be addressed. Defendant argues that the trial court erred in denying his motion for summary judgment because no enforceable contract was created between the parties.

This Court cannot consider an appeal of denial of the summary judgment motion now that a final judgment on the merits has been made:

> Improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts, either judge or jury.

> To grant a review of the denial of the summary judgment motion after a final judgment on the merits . . . would mean that a party who prevailed at trial after a complete presentation of evidence by both sides with cross-examination could be deprived of a favorable verdict. This would allow a verdict reached after the presentation of all the evidence to be overcome by a limited forecast of the evidence. In order to avoid such an anomalous result, we hold that the denial of a motion for summary judgment is not reviewable during appeal from a final judgment rendered in a trial on the merits. . . .

*Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985). *See also Gregory v. Kilbride*, 150 N.C. App. 601, 615, 565 S.E.2d 685, 695 (2002), *disc. review denied*, 357 N.C. 164, 580 S.E.2d 365 (2003); *Pate v. State Farm Fire & Cas. Co.*, 136 N.C. App. 836, 837-38, 526 S.E.2d 497, 498 (2000); *Duke University v. Stainback*, 84 N.C. App. 75, 77, 351 S.E.2d 806, 807 (1987). Thus, we cannot address defendant's first argument.

**[2]** Defendant next argues that because his performance under the contract was impossible, the court erred in denying his other motions. Defendant links this argument to assignment of error 8, which concerns only the failure of the jury to follow the court's instructions in calculating damages. However, because the argument does concern denial of the motions listed in the assignment of error and does relate to a question submitted to the jury, we will consider it here. N.C.R. App. P. 2.

The trial court found as a matter of law that the lease agreement signed by the parties was valid, but submitted to the jury the following question: "Was the defendant's failure to perform under the terms

**WRI/RALEIGH, L.P. v. SHAIKH**

[183 N.C. App. 249 (2007)]

of the commercial lease excused by an event which was not reasonably foreseeable?" The jury answered "[n]o," and was then asked to consider the amount of damages to be awarded.

During the charge conference, the judge laid out a lengthy example that he planned to give the jury regarding frustration of purpose. He then gave that example to the jury in his instructions to them, taking care to distinguish the defense of impossibility—which he told them was not applicable here—from the doctrine of frustration of purpose. Specifically, the judge told the jury that the doctrine of impossibility did not apply because he had determined that no evidence was presented to show that "the installation of a grease trap was completely impossible in the context of this dispute."

Defendant argues that the doctrine of impossibility does apply here, and thus should have been submitted to the jury, because he could not have operated the restaurant he planned to operate in the space. This argument misstates the meaning of the doctrine, which applies when the purpose of a contract is somehow frustrated such that *no one* could perform under it, not just the current parties: "Impossibility of performance is recognized in this jurisdiction as excusing a party from performing under an executory contract if the subject matter of the contract is destroyed without fault of the party seeking to be excused from performance." *Brenner v. School House, Ltd.*, 302 N.C. 207, 210, 274 S.E.2d 206, 209 (1981). *See also Steamboat Co. v. Transportation Co.*, 166 N.C. 582, 82 S.E. 956 (1914) (applying doctrine to contract between ship owner and party leasing it for ferrying purposes when ship was destroyed by fire through no fault of parties); *Barnes v. Ford Motor Co.*, 95 N.C. App. 367, 382 S.E.2d 842 (1989) (affirming trial court's instruction on doctrine of impossibility where subject matter of lease, a tractor, was destroyed). That clearly is not the case here, as the premises at issue still exist and at the time defendant refused to perform were in the same condition as when the contract was signed.

In addition, the trial court's decision was proper based on the evidence presented at trial: Defendant argues that he could not have opened a restaurant on the premises at issue because it was impossible to install the proper grease trap, but conclusive evidence was presented that the current tenants of the property were in fact running a restaurant and had installed a functioning grease trap. Thus, the court was correct in concluding that the doctrine of impossibility was not an issue for the jury because, clearly, installing the trap was not impossible.

However, while defendant specifically defines its argument as arising under the doctrine of impossibility, defendant's argument is in fact rooted in the doctrine of frustration of purpose. This is similar to, but distinct from, the doctrine of impossibility:

> " 'Although the doctrines of frustration and impossibility are akin, frustration is not a form of impossibility of performance. It more properly relates to the consideration for performance. Under it performance remains possible, but is excused whenever a fortuitous event supervenes to cause a failure of the consideration or a practically total destruction of the expected value of the performance. The doctrine of commercial frustration is based upon the fundamental premise of giving relief in a situation where the parties could not reasonably have protected themselves by the terms of the contract against contingencies which later arose.' "

*Brenner*, 302 N.C. at 211, 274 S.E.2d at 209 (quoting 17 Am. Jur. 2d *Contracts* § 401). This concept more accurately describes the argument defendant advances here: That an investigation conducted after the lease was signed revealed conditions that resulted in " ' "practically total destruction of the expected value of the performance." ' " *Id.*

However, the doctrine of frustration cannot be used where the frustrating event was reasonably foreseeable. *Brenner*, 302 N.C. at 211, 274 S.E.2d at 209. As such, the question submitted to the jury— "Was the defendant's failure to perform under the terms of the commercial lease excused by an event which was not reasonably foreseeable?"—correctly conveyed the doctrine of frustration of purpose. During the charge conference, defendant did not object to this question being submitted to the jury on either of the two occasions when the court presented it to both parties. Presumably, then, this question properly conveyed the issue that defendant wanted the jury to answer. It also properly conveys the law. As such, we cannot say the trial court erred on this point.

[3] Defendant's final two arguments are properly before the Court. The first such argument is that the trial court erred in denying defendant's motions for new trial and amendment or modification of judgment[1] because the jury failed to follow the court's instructions on

---

1. In the same motion to the trial court, defendant also renewed his motion for a directed verdict by asking for a judgment notwithstanding the verdict. However, defendant makes no mention of this motion in his brief, and as such it is not properly before us.

**WRI/RALEIGH, L.P. v. SHAIKH**

[183 N.C. App. 249 (2007)]

calculating damages—specifically, that the jury failed to reduce damages to present value. We disagree.

The instructions to the jury regarding present value in the calculation of damages went as follows:

> And, ladies and gentlemen, I further instruct you that since the landlord in this case seeks to recover damages for future rents that were lost, any amount you award as future damages for breach of contract must be reduced to their present value because receiving a smaller sum now is equal sum [sic] to be received in the future.

In his closing statement, plaintiff's attorney gave plaintiff's damages as exactly $158,542.13, based on calculations from plaintiff's exhibit 19, which showed various financial data concerning the transactions between the two parties. One of defendant's attorneys referred to reducing damages to present value in his closing statement:

> Now the third issue, and I think the Judge will instruct you on this, when you of course under this document [sic], the payments that they're calculating are—is money that they can expect to receive out to—to five years from now . . . to 2010. And so that's money that they are not entitled to receive until five years from now. And so, the law is that they're only entitled to the present value of that future stream of revenue.
>
> So, somehow you must figure a way to discount that stream of revenue. And quite frankly, nobody in here [sic] and there hasn't been any evidence as to how you go about doing it. I think there's something called a discount rate or some way there—there are typically formulas to reduce future revenues to their present value. I—I quite frankly don't know exactly what they are and there isn't any evidence in here at all as to how you are to do that. But in fact, the law requires you to make some sort of adjustment for that fact.

The jury returned a verdict in plaintiff's favor for exactly $158,542.13. Defendant made a motion for new trial or amendment of judgment under Rule 59 based on the jury's disregard of the trial court's instructions as to damages.

Defendant argues that, because there is no evidence that this number represents damages reduced to their present value, the jury's

calculations are invalid and thus the case must be remanded for new trial. We disagree.

> It has been long settled in our jurisdiction that an appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest abuse of discretion by the judge. . . .
>
> . . .
>
> [I]t is plain that a trial judge's *discretionary* order pursuant to G.S. 1A-1, Rule 59 for or against a new trial upon *any* ground may be reversed on appeal only in those exceptional cases where an abuse of discretion is clearly shown.

*Worthington v. Bynum and Cogdell v. Bynum*, 305 N.C. 478, 482-84, 290 S.E.2d 599, 602-03 (1982); *see also Roary v. Bolton*, 150 N.C. App. 193, 194, 563 S.E.2d 21, 22 (2002) ("[g]ranting a motion for a new trial under Rule 59 is directed to the discretion of the trial court. The trial court's ruling will thus not be disturbed upon appeal without a finding of abuse of discretion") (citations omitted). "An abuse of discretion occurs when the trial court's ruling 'is so arbitrary that it could not have been the result of a reasoned decision.' " *Chicora Country Club, Inc. v. Town of Erwin*, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997) (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).

As noted above, the amount of the judgment was the same amount requested by plaintiffs. The trial court considered and rejected defendant's argument in post-trial motions that this figure had not been reduced to present value. We cannot say that this ruling is an "exceptional case" that rises to the level of a "manifest abuse of discretion" by the trial court.

This Court is aware of no requirement that a trial court instruct a jury on the concept and calculation of present damages in cases such as the one at hand. Regardless, it cannot be said with certainty that the jury's calculation of damages made no adjustments for present value and thus disregarded the instruction. Both sides presented evidence as to the amount of damages, such as the possibility of plaintiff's being able to re-let the premises to new tenants (thus lowering damages) as well as the possibility of the current tenants abandoning the premises before expiration of their lease (thus increasing dam-

ages). Further, defendant provided the jury no evidence as to the present value of damages, nor did he request that the court instruct the jury on a formula or even general guidelines for determining present value. As such, we see no support for defendant's claim at this late date that the jury failed to properly calculate the present value of damages.

Defendant cites *Circuits Co. v. Communications, Inc.*, 26 N.C. App. 536, 216 S.E.2d 919 (1975), for the tenet that when a jury miscalculates damages by disregarding an instruction of the trial court, the appropriate remedy is remand for a new trial. However, in *Circuits*, the trial court made a finding of fact that the jury had disregarded its instructions and *the trial court* modified the amount of the award itself to conform it to those instructions. It is that act on which the Court based its reversal. *Id.* at 540, 216 S.E.2d at 922 ("[w]e find nothing in the new Rules of Civil Procedure which would grant to the court the authority to modify the verdict by changing the amount of the recovery. . . . There must be a new trial on the issue of damages"). This case is inapposite to the case *sub judice*, where the trial court made no such modification to the jury's decision and in fact refused to disturb it. We find no error.

[4] Defendant next argues that the trial court erred in granting attorneys' fees based on N.C. Gen. Stat. § 6-21.2 (2005) because the statute is inapplicable. We disagree.

Upon motion by plaintiff, the trial court ordered defendant to pay plaintiff attorneys' fees in the amount of $23,781.32 pursuant to N.C. Gen. Stat. § 6-21.2, which states that "[o]bligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness . . . shall be valid and enforceable, and collectible as part of such debt[.]" Defendant appeals this order on the grounds that a lease is not evidence of indebtedness under the statute.

Our Supreme Court has held that even where parties have contractually obligated themselves to pay attorneys' fees, there must still be statutory authority for their recovery. *Enterprises, Inc. v. Equipment Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814 (1980) ("the general rule has long obtained that a successful litigant may not recover attorneys' fees . . . unless such a recovery is expressly authorized by statute"). Thus, even though attorneys' fees are expressly provided for by the lease contract, they must also be authorized by statute.

Our Supreme Court has determined that the language of N.C. Gen. Stat. § 6-21.2 is to be interpreted broadly: "[W]e hold that the term 'evidence of indebtedness' as used in G.S. 6-21.2 has reference to any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money." *Enterprises, Inc.*, 300 N.C. at 294, 266 S.E.2d at 817. In addition, this Court has applied N.C. Gen. Stat. § 6-21.2 to disputes regarding the lease of real property. *RC Associates v. Regency Ventures, Inc.*, 111 N.C. App. 367, 372, 432 S.E.2d 394, 397 (1993). Thus, we see no error in the trial court's awarding of attorneys' fees on the basis of this statute.

Because the trial court did not err in denying defendant's motions for new trial and amendment of judgment based on the jury's calculation of damages, or in awarding attorneys' fees to plaintiff based on statute, we affirm.

Affirmed.

Chief Judge MARTIN and Judge STROUD concur.